IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| MOHAMMAD Y. SHAIKH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| DR. WAYNE WATSON, his capacity as Chancellor of the CITY COLLEGES OF CHICAGO, CITY COLLEGES OF CHICAGO, MALCOLM X COLLEGE, GHINGO W. BROOKS, individually and in his capacity as President of and as Agent of Malcolm X College, RON ANTOINE, individually and in his capacity as Human Resources Administrator and as Agent of Malcolm X College, | ) ) ) ) ) ) ) Jury Demanded |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES, Plaintiff MOHAMMAD Y. SHAIKH, by and through counsel, ROBERT A. HOLSTEIN of Holstein Law Offices, LLC, and complains against the herein Defendant MALCOLM X COLLEGE, as follows:

**PARTIES**

1. Plaintiff MOHAMMAD Y. SHAIKH was an employee of MALCOLM X COLLEGE but has been discriminated upon. Plaintiff is a resident of the county of DuPage, State of Illinois.

2. Defendant DR. WAYNE WATSON is the Chancellor of the City Colleges of Chicago, who, in his official capacity, is required to sign off on the appointments and dismissals done by any heads of the seven community colleges that compose the City Colleges of Chicago.

3. Defendant CITY COLLEGES OF CHICAGO is composed of seven community colleges which provide learning opportunities for Chicago residents. It is part of the Illinois Community

College System. It is governed by a board of trustees.[1] It receives funding from three major sources: local property taxes, student tuition and fees and state appropriations.

4. Defendant MALCOLM X COLLEGE is one of the seven college of the City Colleges of Chicago. Being the first of the city colleges to be founded, as Crane Junior College, it was the precursor of the City Colleges of Chicago. Ironically, it was renamed in 1969 after the civil rights advocate Malcolm X.

5. Defendant GHINGO W. BROOKS is the President of Malcolm X College who has the authority to make appointments and to dismiss or terminate employees or staff members of the college subject to the ultimate approval of the Chancellor of City Colleges of Chicago.

6. Defendant RON ANTOINE is the Human Resources Administrator for Malcolm X College whose decision is also instrumental in the hiring or firing of any employee or staff member of Malcolm X College.

**JURISDICTION AND VENUE**

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in conjunction with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 (ADEA).

8. Venue is properly laid in the Northern District Court of Illinois pursuant to 28 U.S.C. §§1391 (a) in that the Defendants are located and conducting business within the district.

---

[1] Each community college district elect their board of trustees with the exception of the City Colleges of Chicago whose members are appointed by the Mayor of Chicago.

**FACTUAL BACKGROUND OF THE CASE**

9.  Plaintiff, an Islamic naturalized citizen having been born a citizen of Pakistan, started his employment as a Laboratory Assistant II in the Chemistry laboratories of the Defendant in 1971 until 2003 when the position was eliminated due to budget considerations.

10. Not long after that elimination of the Laboratory Assistant position, Plaintiff was rehired in the same department as a Teaching Assistant and was holding that position until he was wrongfully terminated in August 2007.

11. Plaintiff won the grievance proceeding in February 2008.

12. While his employment was resumed in February 2008, Plaintiff was assigned to another department, the Department of Physics as the start of Plaintiff being subjected to different retaliatory, hostile and discriminatory acts.

13. The workplace in the Physics Department that Plaintiff was assigned to was ill maintained and contained obsolete equipments. Plaintiff asserts that nobody else was ever assigned to work in that specific area where he was assigned for the last 25 years that the area gathered so much dust. He made express requests to his superiors in the department to dust the place but the request fell into deaf ears.

14. The workplace that he was assigned to work in has no window. Furthermore, Plaintiff was not allowed to pass through a cleaner, shorter and faster access to that area but instead was ordered to pass through a series of storage rooms that are as equally ill-maintained as the assigned workplace.

15. This workplace posed grave danger to his health as Plaintiff has a heart condition and has a pacemaker and has trouble breathing. Defendants Brooks and Antoine, at all times relevant hereto knew or should have known of Plaintiff's physical ailments

16. Before Plaintiff's wrongful termination in 2007, the standard procedure for relaying information or request regarding instances of being late for morning or afternoon sessions is that you pass the information or message to the individual you are working with or assisting in the department. When Plaintiff was terminated in 2007 because of tardiness in sometimes reporting back to work on Friday afternoons due to his attending his won the arbitration, he was required to relay his message of being tardy directly to the chairman of the department which oftentimes would not reach the chairman in time since he is more often than not, unavailable.

17. Being a devout follower of Islam, Plaintiff strictly practices the religious requirement of his religion especially when it comes to time or hour for prayer. Plaintiff's lunch break has always been between 12:00 noon to 1:30 p.m. so that he could devote part of his break for prayer. This constitutionally guarded right was, however, unlawfully deprived from him since Plaintiff won the arbitration in 2008 as he was ordered to take his lunch break only between 11:00 to 11:45 a.m.

18. As if adding salt to injury, Defendant unlawfully terminated Plaintiff on June 30, 2009. This termination was in the guise of reduction in force. After Plaintiff was unlawfully terminated, another much younger individual was hired to perform the same job functions / description but given another job title, this notwithstanding the Plaintiff writing to the Defendant through its Human Resources Director that he is willing, able and available to serve the student community.

19. Plaintiff even requested information from the Defendant as to the employees who were retained or rehired since, on information and belief most of the employees on notice have been accommodated on different budgets. Unfortunately, the request was denied.

**Count I**
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2**

20. Plaintiff MOHAMMAD SHAIKH realleges Paragraphs 1 to 19 above as Paragraph 20 of this Count I with the same force and effect as though fully set forth.

21. As stated in the above paragraphs, Defendant wrongfully terminated the Plaintiff and to suffer injuries due to one or more of the following:

   a) because of his religious beliefs [Muslim];

   b) because of his national origin or race [Pakistani];

   c) because of his disability [his heart condition]

**Count II**
**Violation of the Age Discrimination in Employment Act of 1967 (ADEA)**

22. Plaintiff MOHAMMAD SHAIKH realleges Paragraphs 1 to 21 above as Paragraph 22 of this Count II with the same force and effect as though fully set forth.

23. Plaintiff's rights under this law was violated when he was unlawfully terminated, not rehired and somebody with much younger age was hired to take over his job functions, even if Plaintiff vigorously expressed his desire to go back to work but was rejected, all of which is due to his age.

**Count III**
**Retaliatory Discharge and Tortuous Interference**

24. Plaintiff MOHAMMAD SHAIKH realleges the above paragraphs as Paragraph 24 of this Count III with the same force and effect as though fully set forth.

25. Defendants terminating Plaintiff's employment on June 30, 2009, within a year of his having won collective bargained union grievance over his previous wrongful termination in a contested arbitration that involved these same Defendants. Named Defendants were furious over the failure of their initial efforts to rid themselves and the College of a practicing Islamic citizen in their midst. They retaliated by creating working conditions for the Plaintiff such that he would quit on his own volition. When he did not do so, the Defendants retaliated by creating a fraudulent pretext and further intentionally interfered with Plaintiff's union rights in that the Plaintiff did attempt to pursue a grievance with his union. But when a meeting was held with the business agent and the named Defendants, Defendants insisted that the Plaintiff not be present, but instead had to wait outside the meeting room. When the union representative came out of the meeting, he told the Plaintiff there was nothing the union could do for him at that point.

**Count IV**
**Intentional Infliction of Emotional Distress**

26. Plaintiff MOHAMMAD SHAIKH realleges all the foregoing paragraphs above as Paragraph 26 of this Count IV with the same force and effect as though fully set forth.

27. The Defendant's discriminatory acts committed to the Plaintiff after his reinstatement when he won the grievance in February 2008 until he was again unlawfully

terminated on June 30, 2009 were deliberate and intentional acts to inflict emotional distress which is taking a toll on Plaintiff's heart condition.

WHEREFORE, Plaintiff MOHAMMAD SHAIKH demands a jury trial and after which Plaintiff requests this Honorable Court to enter judgment in his favor and against the Defendant as follows:

a.) Award compensatory damages in an amount to be proven at trial;

b.) Award Plaintiff punitive damages in such an amount as to deter other institutions or entities that do not respect the equal rights of all persons so as to deter them from abusing the rights afforded their foreign citizen employees the rights all persons legally domiciled in the United States;

c.) Award Plaintiff attorney's fees and costs of this lawsuit;

d.) Such other and further relief as this Court deems appropriate.


s/ *Robert A. Holstein*
_____
Plaintiff's Counsel

Robert A. Holstein
HOLSTEIN LAW OFFICES, LLC
29 S. LaSalle St., Suite 230
Chicago, Illinois 60603
Tel. No. (312) 906-8000
Fax No. (312) 609-1089
ARDC No. 1251600
holsteinlaw@sbcglobal.net