IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMMAD Y. SHAIKH<br><br>        Plaintiff,<br>    v.<br><br>BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, d/b/a CITY COLLEGES OF CHICAGO,<br><br>        Defendant. | Case No. 10-CV-01715<br><br>Judge Guzman<br><br>Magistrate Judge Ashman |

**DEFENDANT'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendant, the Board of Trustees of Community College District No. 508 ("City Colleges") states the following for its Answer and Affirmative Defenses to the Third Amended Complaint of Plaintiff Mohammad Y. Shaikh:

**NATURE OF THE CASE**

1. Shaikh brings this action to redress acts of unlawful termination, violation of his rights under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, 20 U.S.C. §§ 621 *et. Seq.* [ADEA] and the Americans with Disabilities Act as amended, 42 U.S.C. §§12101 *et seq.* [ADA].

**Answer:** City Colleges admits that Plaintiff contends that his employment was wrongfully terminated in violation of his rights under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. City Colleges denies that Plaintiff's Third Amended Complaint alleges any violation of the Americans With Disabilities Act. City Colleges

733355.1

further denies that it wrongfully terminated Plaintiff's employment or violated the referenced statutes, and denies the remaining allegations of Paragraph 1.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in conjunction with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 20 U.S.C. §§ 621 et. seq. [ADEA] and the Americans with Disabilities Act as amended, 42 U.S.C. §§12101 et seq. [ADA].

**Answer:** City Colleges admits that the Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. City Colleges denies that Plaintiff alleges any claim under the Americans With Disabilities Act and denies the remaining allegations of Paragraph 2.

3. Venue is properly laid in the Northern District Court of Illinois pursuant to 28 U.S.C. §§1391 (a) in that the Defendants are located and conducting business within the district.

**Answer:** City Colleges admits the allegations of Paragraph 3.

## PARTIES

4. Plaintiff SHAIKH was an employee of MALCOLM X COLLEGE but has been discriminated upon. Plaintiff is a resident of the county of DuPage, State of Illinois.

**Answer:** City Colleges admits that Plaintiff was employed by City Colleges at Malcolm X College. Upon information and belief, City Colleges admits that Plaintiff resides in the county of DuPage, State of Illinois. City Colleges denies the remaining allegations of Paragraph 4.

5. Defendant CITY COLLEGES is responsible for the policies, procedures, practices and omissions implemented in the City Colleges of Chicago system composed of seven community colleges, through its various divisions, departments, agencies, agents and employees and for any resulting injury caused by its acts and/or omissions.

**Answer:** City Colleges admits that the City Colleges of Chicago system includes seven community colleges, that City Colleges is responsible for some policies, procedures, practices, and omissions implemented in this system through its various departments, agents and employees. City Colleges denies that it is responsible for injuries caused by acts and/or omissions of its departments, agents, or employees, except to the extent that such liability is imposed by applicable law. City Colleges denies that any such liability exists with respect to the matters alleged in Plaintiff's Complaint, and denies the remaining allegations of Paragraph 5.

## FACTUAL BACKGROUND OF THE CASE

6. Malcolm X College is one of the seven college [sic] of the City Colleges of Chicago. Being the first of the city colleges to be founded, as Crane Junior College, it was the precursor of the City Colleges of Chicago. Ironically, it was renamed in 1969 after the civil rights advocate Malcolm X.

**Answer:** City Colleges admits that Malcolm X College is one of the seven City Colleges of Chicago, that Malcolm X College is located near the former site of Crane Junior College, and that it was named after civil rights leader Malcolm X. City Colleges denies the remaining allegations of Paragraph 6.

7. Plaintiff, an Islamic naturalized citizen having been born a citizen of Pakistan, started his employment as a "Laboratory Assistant II" in the chemistry laboratories of the Malcolm X College in 1971.

**Answer:** City Colleges admits upon information and belief that Plaintiff is Muslim, that he was born in Pakistan and that he is now a naturalized citizen of the United States. City Colleges admits that Plaintiff started his employment with City Colleges of Chicago in 1971. City Colleges denies the remaining allegations of Paragraph 7.

8. While working at the Malcolm X College, Plaintiff sometime in the mid 1970's suffered severe acid burns to his face, neck, shoulders and upper body areas. His face was severely disfigured after he stepped, slipped and fell on a pool of acid on the floor of an unlighted storage room. The shelves had previously held one-gallon glass jugs of various acids, including sulphuric [sic] and hydrochloric acids, broke and spilled its contents after they fell due to the weak construction of the shelves where they were stored. The result was a pool of combined acids in the tiny unlighted storage room of the chemistry laboratories at Malcolm X College that the unsuspecting chemistry teacher /lab assistant slipped on and fell head first into.

**Answer:** Upon information and belief, City Colleges admits that in 1974, Plaintiff fell while working at Malcolm X College and suffered burns from acid that had been stored in bottles that broke as a result of his fall. City Colleges denies the remaining allegations of Paragraph 8.

9. In the late 1990s when the college disallowed the use of a particular designated conference type room for Friday prayers for members of the Islamic faith which had previously been the practice for as long as the Plaintiff has been associated with the college. At the time the conference room was retired for that purpose, there were discussions which included the Plaintiff and various other persons of the Islamic faith as well as various administrators as to why that had occurred. The answer was that the room was needed at the time for other purposes. However,

those purposes were never enumerated nor did the room appear to be occupied at that time on any regular basis or for any regular purpose.

**Answer:** City Colleges denies the allegations of Paragraph 9.

10. After the conference room had been declared unavailable to Islamic staff members of Malcolm X for Friday, Holy Day noon prayers the Islamic staff members including the plaintiff who had lunch period from 12:30 p.m. to 2:00 which enabled them to leave the college, attend a mosque in the area and be back at work by 2:00 p.m. for afternoon classes. Friday noon prayers became problematic but manageable. There is mosque located in the vicinity of the college so that as long as the lunch hour remained as it was, Plaintiff was able to attend services at the mosque and return in time for the Friday afternoon lab classes.

**Answer:** City Colleges lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that, at some unspecified time "in the late 1990's" Plaintiff or other Muslim staff members of Malcolm X College attended prayers at a mosque located near Malcolm X College on Fridays from 12:30 p.m. to 2:00 p.m. City Colleges denies that Plaintiff ever complained or reported to City Colleges that his work schedule conflicted with his Friday prayers, and denies the remaining allegations of Paragraph 10.

11. On July 3, 2003, Plaintiff, together with other City College staff persons, was forced to retire from his job due to a City Colleges budget crunch. But he and others were rehired sometime in September 2003 for the beginning of the 2003 - 2004 school year. He was rehired for the same job but with a new title - Teaching Assistant. However, Mr. Boniface Ekpenyong, Chairman of the Physical Science Department insisted that the lunch hour for the Chemistry department be changed to 11:30 a.m. to 1:00 p.m making it very difficult for the Plaintiff to attend Friday prayers at the mosque and return in time for the beginning of the afternoon lab

classes. The effect was to cut the time allotted for Islamic Friday prayer services. Plaintiff discussed this situation with the chairman. His response was curt and to the effect "too bad that is the way it is." Because the Plaintiff would sometimes get delayed in traffic, he would be a few minutes late getting back for the afternoon lab class. Questions by various administrative personnel as to what Plaintiff does on Fridays to extend his lunch hours beyond the normal one hour. Such "innocent" questions began to occur in 2003 by various personnel.

**Answer:** City Colleges admits that Plaintiff's full-time position was eliminated due to budget reductions effective as of July 3, 2003; that Plaintiff elected to retire after being notified of this reduction in force; that Plaintiff was subsequently re-hired in a part-time Lab Assistant position. Defendant denies the remaining allegations of Paragraph 11.

12. In July of 2003, Mr. Shaikh's position was eliminated due to budget issues with "Fund One", the fund from which he had been paid for many years. When he was rehired to do exactly the same things he had been doing since 1971, preparing the Chemistry lab pursuant to the instructors' laboratory lesson plans for each of the classes, the Plaintiff's title was changed to that "Teaching Assistant" and his salary was no longer paid out of "Fund One".

**Answer:** City Colleges denies the allegations of Paragraph 12.

13. One of the ways Plaintiff was able to adjust to the Friday prayer issue and the lunch hour was to arrange to work longer hours Monday through Thursday thereby putting in 40 or more hours in 4 days. He simply did not work on Fridays. However, between 2003 and 2007, there were semesters when he was unable to do this. When he was forced to work on Friday, he would often be a few minutes late in arriving for the start of Friday afternoon chemistry lab class although he would call and leave messages about his delay, they often did not get relayed to the

instructor. This became the source of an irritant to Mr. Boniface Ekpenyong. Plaintiff eventually became very upset about it.

**Answer:** City Colleges admits that Plaintiff generally worked only Monday through Thursday; that on the few occasions when he worked Fridays Plaintiff was able to accommodate his Friday prayers; and that he was frequently late for work. City Colleges denies the remaining allegations of Paragraph 13.

14. Once, the then President of Malcolm X College, Zerrie Campbell asked the Plaintiff why he was not working five days. When Mr. Shaikh informed her why he worked four days [8:00 A.M. to 9:00 P.M. Mondays through Thursdays] instead of five days [8:00 a.m. to 4:00 p.m.], he responded that it was to accommodate the school because he uses Fridays for his prayers so the President said: "then you can continue working four days."

**Answer:** City Colleges admits that Plaintiff continued to work a four-day schedule. City Colleges lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14.

15. Plaintiff believes that it was in the Fall of 2003, that the City Colleges System and/or the responsible executives of Malcolm X College and/or the department chair together with the senior responsible executives at the college unknown to the Plaintiff at the time began to maintain a file of incidental and non-consequential department and administrative employment requirements to provide a pretext for terminating his relationship with the college.

**Answer:** City Colleges denies the allegations of Paragraph 15.

16. In 2006, a gentleman by the name of Michael Gorman was made Associate Dean of Arts and Sciences. Although Mr. Gorman had also been employed at the college prior to his

being named Associate Dean, the Plaintiff's path and that of Mr. Gorman not crossed. Prior to that, they had no dealings, work related communications or contact.

**Answer:** City Colleges admits that Mr. Gorman became Associate Dean of Arts and Sciences at Malcolm X College in or about 2006. City Colleges lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16.

17. After Mr. Gorman was appointed Dean, new faculty began to appear in the Chemistry department it appeared to the Plaintiff that an all out effort was made by Gorman and Ekpenyong and others to do whatever was necessary to get him to quit his job including setting him up to fail in ridiculous chores including changing the responsibility to clean up the labs and put their equipment and supplies away from being of the students' to that of the Plaintiff's. Their instructions contained in e-mails are, at best, described as discriminatory, oppressive and retaliatory. From that time forward, the Plaintiff was subjected to an unending series of harassing, provocative and vexatious indignities, all designed to make him quit his job ro to become too ill and emotionally or physically unable to continue working. The e-mails and/or other correspondence are attached herein as Group Exhibit A.

**Answer:** City Colleges admits that new faculty members were hired in the Physical Sciences department at Malcolm X College after Mr. Gorman was appointed dean. City Colleges denies the remaining allegations of Paragraph 17.

18. In addition to the exhibited tasks Plaintiff was burdened with, there were such things as being required April of 2007, Plaintiff was directed to submit a list of all keys he had in his possession regardless of whether those keys fitted to any known lock at the college facilities or not. Plaintiff submitted a list within a few days.

**Answer:** City Colleges lacks knowledge or information sufficient to form a belief as to the truth of the allegation that in April 2007 Plaintiff was asked to submit a list of keys he had in his possession. City Colleges denies the remaining allegations of Paragraph 18.

19. Two months later, the Plaintiff was again requested to furnish in writing another list of the keys that he had acquired since starting work at Malcolm X College that are currently or were once associated with college facilities. He again complied and furnished the same list he previously gave the school administration in April 2007. See Exhibit B.

**Answer:** City Colleges lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.

20. Another occurrence concerned abandonment of employment that occurred on the day Plaintiff was injured on June 29, 2007 as a result of his work while performing student laboratory chemical preparation when he was burned on his right hand requiring supervisory personnel to order him and the security department to transport him to a nearby hospital for emergency care after which he immediately returned to the college for the purpose of continuing with his day of work when he was informed by the Human Resources Department that he needed a doctors certificate in order to return to work and that he should leave immediately to seek such a certificate which Plaintiff did.

**Answer:** City Colleges admits that on June 29, 2007, Plaintiff failed to follow proper safety procedures while handling a solution of sodium hydroxide (*i.e.*, lye) and as a result experienced chemical burns to his hand; that Plaintiff was transported to the hospital for emergency care; that Plaintiff was directed to obtain a doctor's certificate confirming his ability to resume performing his job functions and identifying any necessary accommodations; that Plaintiff initially provided a certification from his physician stating that he could work with his

9

hand "covered," but providing no further details regarding what type of covering was needed or any other needed accommodations; that Plaintiff was asked to provide additional documentation from his doctor clarifying any accommodations needed; and that on or about August 26, 2007 Plaintiff provided a second note from his physician stating that Plaintiff was unable to work from June 27, 2007 through August 26, 2007. City Colleges denies the remaining allegations of Paragraph 22.

21. Between the time of the June 29, 2007 accidental injury and the hearing scheduled for August 7, 2007, he was ordered "not to handle any chemicals, under any circumstances while at Malcolm X College until this matter has been addressed." They attached the school chemistry laboratory guide pages 8 and 9. He was singled out and pretextually charged with violating laboratory safety guides established for students.

**Answer:** City Colleges admits that on June 29, 2007, Plaintiff was directed not to handle any chemicals pending receipt of an official medical release and the outcome of a disciplinary hearing regarding Plaintiff's failure to follow appropriate safety procedures. City Colleges denies the remaining allegations of Paragraph 21.

22. Immediately after the hearing regarding the discipline which took place on August 6, 2007, the Plaintiff was informed on August 13, 2007 that the office he had occupied, Room 3111 for at least 10 years or more he would have to vacate and that he would no longer occupy an office facility. Instead, he was told that by August 15, 2007, he was to be relocated with all his personal papers, textbooks, reference books, equipment and other educational research documents that he had accumulated over the years as part and parcel of his professional obligations together with all his personal items to a work station located within the chemical laboratory itself. The Plaintiff had previously complained that he was concerned for the students

as well as staff members including himself as to the air quality within the chemistry laboratory because of his asthma and heart condition which already taxed his breathing. In spite of this concern, he was instructed to occupy a work station located within the laboratory itself. The College had a test of the air quality made by an independent laboratory which presumably determined the air quality met OSHA exposure levels. However, the college failed to acknowledge Plaintiff's advice that the so-called test was performed under conditions unlike those that he would be exposed to. The Plaintiff pointed out to the administration that the report concerned the quality of air was of a very small sampling in time and under a particular condition that the chemistry classes perchance were conducting at the time as opposed to what he would be exposed to by being required to conduct all of his administrative functions at the college during working hours, during laboratory class hours on a daily basis for the entire day. Due to the poor air quality resulting from spending all day in the contaminated air of the chemistry lab, he was caused to suffer respiratory deficiency aggravating his asthma and heart condition. At all times relevant, the Plaintiff's supervisors and administration were aware of Plaintiff's heart and asthma conditions. No response to the Plaintiffs criticism as to the so-called independent laboratory air quality test results has ever been forthcoming.

**Answer:** City Colleges admits that Plaintiff was informed on or about August 13, 2007 that the office to which he was assigned at the time was to be reassigned to accommodate newly-hired faculty; that Plaintiff was instructed to move his personal items to a new work station in the chemistry laboratory work area; that Plaintiff had previously complained about the air quality in the chemistry laboratory; that City Colleges engaged an outside consultant to conduct air quality testing in the laboratory; that the testing confirmed there were no air quality

issues in the laboratory; and that Plaintiff claimed, incorrectly, that the air quality testing was not properly conducted. City Colleges denies the remaining allegations of Paragraph 22.

23. The Plaintiff is seeking compensatory damages as allowed by law. Those include his loss of past, present and future lost income, his past, present and future pain and suffering, his temporary physical disability, his medical bills and expenses; his future physical disability, his past, present and future personal injuries including his heart condition whether caused by or aggravated by the discriminatory acts of the Defendant and for his past, present and future emotional injuries.

**Answer:** City Colleges admits that Plaintiff demands the relief described. City Colleges denies that Plaintiff is entitled to the damages described in Paragraph 23 or to any other relief, and denies the remaining allegations of Paragraph 23.

24. In August 2007 when he believes he was terminated because he is Islamic and he insisted on attending Friday Holy Day prayers at a local mosque. However, the Defendants have created a pretextual reason otherwise. Plaintiff believes he filed a claim with the EEOC but either at the time or shortly thereafter, he was approached by the Cook County College Teachers Union - Local 1600 ("CCCTU" for short) of which he was a member, to file a grievance seeking to get his job back. He chose to do so and forego proceeding on the EEOC complaint.

**Answer:** City Colleges admits that Plaintiff's employment was terminated in August 2007 and that Plaintiff filed a grievance challenging his discharge. City Colleges denies the remaining allegations of Paragraph 24.

25. Plaintiff won the grievance proceeding January 14, 2008 and resumed work in February 2008, Plaintiff was assigned to another department within the Physical Sciences school where he had worked for many years in the Chemistry department as the person who would

prepare the labs for the various classes that the instructors would schedule for given lab classes. He was rehired as a member of the Physics department and assigned the job title of Physics Lab Assistant. In fact, he was assigned to the Chemistry labs and performed the exact same functions he was doing before his termination in August of 2007. Only know he performed the same lab duties for both the Chemistry and the Physics instructors.

**Answer:** City Colleges admits that on January 14, 2008 Chancellor Wayne D. Watson issued a memorandum granting Plaintiff's grievance and reinstating him to his position; and that following his reinstatement, Plaintiff was assigned to work in the physics laboratory. City Colleges denies the remaining allegations of Paragraph 25.

26. Soon thereafter, Plaintiff was assigned to a new office which was previously used as an interior storage room. It had no windows, was approximately 6 feet by 8 feet, it had no ventilation or air conditioning. The room had no telephone nor was it wired for his computer. His desk hardly fit in the room and it was old and beat up. He had no computer. There was no fan in the room and it was dirty and dusty. The chair he was given to sit on was old and rickety. The room was dusty and unventilated. The room had no number. He made express requests to his superiors in the department to provide janitorial services for the room including dusting, vacuuming, and emptying of waste baskets but was denied. No other employee in either the Chemistry Department or within the Physics Department was required to maintain an "office" in either the chemistry lab or in an interior store room as described herein. Both locations for his offices in 2007, 2008 and 2009 were injurious to Plaintiff's health and aggravated his illnesses and disabilities. He requested for a different quarters but was denied. Furthermore, Plaintiff was not allowed to pass through a cleaner, shorter and faster access to his "office" but instead was ordered to pass by and adjoining storage area that housed all of the terminals for all of the

electronic in the college in order to get to and from his "office". This posed a grave danger to his health as Plaintiff who has a heart condition and had recently had a pacemaker inserted in addition to asthma both which cause him to have labored breathing. He had been told by his physician to avoid electronic storage type facilities as such equipment pose a threat to short out or interfere with his pacemaker. His superiors were at all times aware of his medical conditions and he complained about having to go back and forth to his "office" that way because of them but still he was denied a change of space or better access.

**Answer:** City Colleges admits that following his reinstatement in February 2008, Plaintiff was assigned to a workspace in the physics area, and that the workspace had been previously been used as a storage and preparation room. City Colleges denies the remaining allegations of Paragraph 26.

27. Plaintiff believes he was placed in these untenable conditions because of his religion, because of his nationality, because of his age, to make him quit his employment which he refused to do.

**Answer:** City Colleges denies the allegations of Paragraph 27.

28. After he returned to work following the winning of his grievance award in January 2008 inspite of the injurious working conditions, he refused to quit. Eventually, his "office" facilities being untenantable and dangerous to his health and welfare, he was again unlawfully terminated on June 30, 2009. This termination was again in the guise of a budgetary required reduction in force. However, after Plaintiff was unlawfully terminated, another much younger individual was hired to perform the same job functions he had been performing while assigned to the Physics department in 2008 although the new hire was given another job title and perhaps paid out of a different grant or named source of funds. Plaintiff filed an EEOC complaint

14

733355.1

on December 14, 2009 due to these acts of discrimination by the Defendants. A copy of EEOC Charge No. 440-2010-01243 is herein attached as Exhibit C.

**Answer:** City Colleges admits that Plaintiff elected to retire effective July 1, 2009 after his position was eliminated effective June 30, 2009 due to the termination of grant funding for his position. City Colleges denies the remaining allegations of Paragraph 28.

29. During these relevant times, Ghingo W. Brooks [hereinafter "BROOKS"] was the President of Malcolm X College who had the authority to make appointments and to dismiss or terminate employees or staff members of the college subject to the ultimate approval of the Chancellor of City Colleges of Chicago and Ron Antoine [hereinafter "ANTOINE'] was the Human Resources Administrator for Malcolm X College whose decision is also instrumental in the hiring or firing of any employee or staff member of the college.

**Answer:** City Colleges admits that at the time of the reduction in force that led to the elimination of Plaintiff's position, Ghingo W. Brooks was President of Malcolm X College and Ron Antoine was a Human Resources Administrator at Malcolm X College. City Colleges denies the remaining allegations of Paragraph 29.

30. At all times relevant hereto, Brooks and Antoine in the scope of their employment with the City Colleges and having supervisory authority over the Plaintiff and other employees of Malcolm X. College, knew or should have known of Plaintiffs physical ailments which included a severe heart condition.

**Answer:** City Colleges denies the allegations of Paragraph 30.

31. Plaintiff believes that he was terminated for reasons that were not necessarily particularly due to his religion, his nationality, or his age but that it could have been due to a combination thereof.

733355.1

**Answer:** City Colleges admits that Plaintiff believes that his employment was not terminated "particularly due to his religion, nationality, or age." City Colleges denies that Plaintiff's religion, nationality, or age played any role in the elimination of Plaintiff's position, and denies the remaining allegations of Paragraph 31.

## Count I
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

32. Plaintiff MOHAMMAD SHAIKH realleges Paragraphs 1 to 31 above as Paragraph 32 of this Count I with the same force and effect as though fully set forth.

**Answer:** City Colleges incorporates its answers to Paragraphs 1 through 31 above by reference as its answer to Paragraph 32.

33. As stated in the above paragraphs, Plaintiff suffered physical and emotional injuries and was wrongfully terminated due to one or more of the following:

    a) because of his religious beliefs [Muslim];

    b) because of his national origin or race [Pakistani];

    c) because of the combination of the above.

**Answer:** City Colleges denies the allegations of Paragraph 33.

## Count II

### Violation of the Age Discrimination in Employment Act of 1967 (ADEA)

34. Plaintiff MOHAMMAD SHAIKH realleges Paragraphs 1 to 31 above as Paragraph 34 of this Count II with the same force and effect as though fully set forth.

**Answer:** City Colleges incorporates its answers to Paragraphs 1 through 31 above by reference as its answer to Paragraph 34.

35. Plaintiff's rights under this law was violated when he was unlawfully terminated, not rehired and somebody with much younger age was hired to take over his job functions.

**Answer:** City Colleges denies the allegations of Paragraph 35.

36. Plaintiff's rights under this law was violated when inspite of Plaintiff's vigorous expression of his desire to go back to work, that he was willing and able to perform all the necessary functions of the job that he was illegally terminated from but was rejected because of his age.

**Answer:** City Colleges denies the allegations of Paragraph 36.

## **AFFIRMATIVE DEFENSES**

1. Plaintiff's claims are barred to the extent that Plaintiff seeks to recover for any alleged unlawful employment actions occurring more than 300 days before Plaintiff filed his charge with the Equal Employment Opportunity Commission on or about December 14, 2009.

2. Plaintiff's claims are barred to the extent that they are outside the scope of a timely Charge of Discrimination filed with the Equal Employment Opportunity Commission.

3. Plaintiff has unreasonably failed to mitigate his damages by, among other things, failing to engage in reasonable efforts to secure alternative employment following the termination of his employment with City Colleges. Alternatively, to the extent that Plaintiff has mitigated his damages, any award of damages must be offset by the amount of any compensation and benefits received by Plaintiff through alternative employment.

        Respectfully submitted,

        BOARD OF TRUSTEES OF COMMUNITY
        COLLEGE DISTRICT NO. 508, Defendant.

        By:/sWilliam R. Pokorny - 06275705
            wrp@franczek.com

Sally J. Scott – 06204350
sjs@franczek.com
William R. Pokorny - 06275705
Franczek Radelet, P.C.
300 S. Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated: January 31, 2012

18

733355.1

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT** to be served upon the following counsel of record via filing with the CM/ECF system on this 31st day of January, 2012:

>Robert A. Holstein
>Holstein Law Offices, LLC
>29 S. LaSalle Street
>Suite 230
>Chicago IL 60603

>/s/ William R. Pokorny - 06275705
>wrp@franczek.com

>Sally J. Scott – 06204350
>sjs@franczek.com
>William R. Pokorny – 06275705
>Franczek Radelet, P.C.
>300 S. Wacker Drive
>Suite 3400
>Chicago, IL 60606
>(312) 986-0300

733355.1