IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMMAD Y. SHAIKH, | ) |
| | ) |
|       Plaintiff, | ) |
| | )    No. 10 C 1715 |
| | ) |
|       v. | )    Judge Ronald A. Guzmán |
| | ) |
| BOARD OF TRUSTEES OF | ) |
| COMMUNITY COLLEGE DISTRICT | ) |
| OF CHICAGO NO. 508 d/b/a | ) |
| CITY COLLEGES OF CHICAGO, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On June 30, 2009, Plaintiff Mohammad Y. Shaikh ("Shaikh") was terminated from his position as a part-time teaching assistant for Defendant City Colleges of Chicago ("CCC"). Shaikh, who is Pakistani, a practicing Muslim, and was over forty years old at the time of his termination, contends that he was terminated because of his age, religion, race, national origin, or a combination of those elements. Shaikh sued CCC for violating the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").[1] CCC moves for summary judgment as to all of Shaikh's claims. For the reasons set forth below, the Court grants CCC's motion.

**I.**    **Facts**

Although the Court set a briefing schedule on CCC's motion for summary judgment on February 6, 2012 (Dkt. # 67), Shaikh, who is represented by counsel, failed to file a response as

---

[1] While Shaikh's Third Amended Complaint ("TAC") initially makes reference to the Americans with Disabilities Act, the complaint includes only two counts, those under Title VII and ADEA. Accordingly, the Court addresses only these two counts.

directed. Accordingly, the Court deems admitted all of CCC's properly supported facts. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

*Shaikh's Work History at CCC*

Shaikh was born in Pakistan on September 15, 1943 and is a naturalized citizen of the United States. (TAC, Dkt. # 79-1, ¶ 7; *id*., Ex. C, Dkt. # 79-3, EEOC charge). In 1971, Shaikh began working for Malcolm X College ("Malcolm X") as a full-time laboratory assistant in the chemistry department. (Def.'s Rule 56.1(a) Stmt., Dkt. # 92, ¶¶ 4-5.) Malcolm X is one of seven colleges that makeup CCC. (*Id.* ¶ 2.) In June 2003, Shaikh's position was terminated during a reduction in force ("RIF") initiative caused by budgetary constraints. (*Id*. ¶ 5.) Shaikh elected to retire, but CCC rehired him as a part-time teaching assistant in September 2003. (*Id.* ¶¶ 6-8.)

On June 27, 2007, Shaikh injured his hand while preparing a sodium hydroxide solution commonly known as lye. (*Id.* ¶ 9.) Although Shaikh knew the dangers of this caustic substance, he did not wear gloves or safety goggles. (*Id.* ¶¶ 10-11.) CCC retained Regulatory Compliance Management ("RCM"), a consulting firm, to investigate the incident. (*Id.* ¶ 13.) RCM determined that Shaikh had failed to wear protective equipment and did not exercise caution when dealing with the chemicals. (*Id.* ¶ 14.) Therefore, CCC concluded that the accident occurred because Shaikh failed to follow proper safety procedures and directed him to temporarily refrain from working with chemicals. (*Id.* ¶ 16.)

On July 2, 2007, Shaikh presented a doctor's note to CCC stating that he could return to work if he covered his injured hand. (*Id.* ¶ 17.) On approximately August 6, 2007, Ron Antoine

2

("Antoine"), CCC's Human Resources Administrator, sent Shaikh a letter requesting additional information about any accommodation that Shaikh required due to his injury. (*Id.* ¶ 18.) As of August 6, 2007, Shaikh stopped going to work and communicating with CCC. (*Id.* ¶ 21.) Accordingly, he was terminated in August 2007 under CCC's job abandonment policy. (*Id.* ¶ 21.) Shaikh's union filed a grievance, and Shaikh was reinstated with full back pay on February 4, 2008. (*Id.* ¶¶ 22-24.)

In 2006 and 2007, Shaikh and others were directed to relocate their workstations in order to accommodate newly hired faculty. (*Id.* ¶ 29.) Shaikh was instructed to move his workstation into the chemistry laboratory work area. (*Id.* ¶ 30.) When he complained about the air quality in the laboratory, CCC hired RCM to investigate Shaikh's complaint. (*Id.* ¶¶ 32-33.) RCM ran tests and concluded in a July 17, 2007 report that the air was safe. (*Id.* ¶ 33). However, when Shaikh returned to Malcolm X after he was reinstated in February 2008, CCC transferred Shaikh to the physics department because of his ongoing complaints about the air quality in the chemistry lab and his 2007 injury. (*Id.* ¶¶ 34-35.) Shaikh's new workstation was located in a room previously used for storage. (*Id.* ¶ 36.) Other employees also had their workstations in areas also used for storage. (*Id.*) Shaikh worked in the Physics Department for the duration of his employment at CCC. (*Id.* ¶37.)

Many positions at Malcolm X are funded through grants. (*Id.* ¶ 38.) Indeed, Shaikh's position had been funded through the Carl D. Perkins Grant ("Perkins Grant"). (*Id.* ¶ 42.) Alta Williams, Malcolm X's Dean of Career Programs, was responsible for preparing Malcolm X's Perkins Grant application for the 2010 fiscal year. (*Id.* ¶ 43.) In consultation with Malcolm X's Grant Analyst Latasha Johnson, Williams determined that the Perkins Grant could not be used to

3

fund Shaikh's position. (*Id.* ¶¶ 44-45.) Since Malcolm X would lose the Perkins Grant if it improperly allocated the funds, Williams informed CCC that several positions, including Shaikh's, could no longer be funded through the grant. (*Id.* ¶¶ 41, 52.) Williams did not know Shaikh, does not recall ever speaking with him, and was not aware of his age, national origin, race, or religion. (*Id.* ¶ 47.) In light of other budgetary constraints at the time, the unavailability of the grant money meant that there were no other funds with which to pay Shaikh. (*Id.* ¶ 49.) Therefore, the administration decided to eliminate Shaikh's position as part of a RIF, in which other employees' positions were also eliminated (*Id.* ¶¶ 50, 52.) None of these individuals has been rehired by CCC. (*Id.* ¶ 53.)

Shaikh was notified of the situation in a May 29, 2009 letter in which he was also encouraged to look and apply for vacant positions on the CCC website. (*Id.* ¶¶ 56-57.) Shaikh was terminated by CCC as of the close of business on June 30, 2009. (*Id.* ¶ 56.) On December 14, 2009, Shaikh filed a discrimination charge against CCC with the EEOC. (*Id.* ¶ 64.)

Although CCC encouraged Shaikh to apply for a new position through its website, Shaikh failed to do so. (*Id.* ¶¶ 57-59.) Shaikh's only attempt to be rehired was to inform Antoine by letter that he would work as a teaching assistant. (*Id.* ¶ 61.) Up to the date of Shaikh's complaint, no teaching assistant positions have opened. (*Id.*)

*Other Alleged Discriminatory Actions and Comments*

Up until the late 1990s, Shaikh used a room at Malcolm X for Friday prayers. (*Id.* ¶ 66.) In the late 1990s, Malcolm X needed the room for school meetings, so Shaikh attended a local mosque for Friday prayers during his lunch hour. (*Id.* ¶ 66.) Due to work conflicts, Shaikh could not always leave campus for Friday prayers. (*Id.* ¶ 67.) Shaikh alleges that the former

4

Chairman of the Natural Sciences Department, Omeola Kale, (who left CCC in 2006) and other unnamed members of the administration asked him questions about his practice of praying during his lunch hours on Fridays. (*Id*. ¶ 68.) Although Shaikh testified at one point in his deposition that he stopped working on Fridays during 2003 in order to accommodate his prayer schedule (*id*. ¶ 67), he also stated that during the last few years of his employment, the Chairman of the Physical Science Department, Boniface Ekpenyong, scheduled Shaikh's lunch breaks to coincide with his prayer time. (*Id*. ¶ 69.) Shaikh also testified at his deposition that on certain days he did not pray "because the classes were ongoing" and "it was to accommodate the department that I would not take the lunch break." (*Id*. ¶ 70.)

Following the September 11, 2001 terrorist attacks, Shaikh alleges that various unnamed colleagues mentioned that Pakistan was a "playground for jihadists." (*Id.* ¶ 72.) In addition, Shaikh testified at his deposition that he believes former department chairman Fred Daniel (who is no longer with CCC) "very politely" inquired in 2000 if it was safe for Shaikh to go to Pakistan to retrieve his adopted daughters. (*Id.* ¶ 72.)

Shaikh's job responsibilities included preparing, maintaining, distributing, and collecting equipment and supplies, ensuring that the laboratories were clean, and supervising trash removal from the lab. (*Id.* ¶ 77.) In 2006, Associate Dean of Arts and Sciences Michael Gorman ("Gorman"), in discussing certain chemistry equipment, instructed Shaikh to "[g]et rid of everything old." (*Id*. ¶ 74.) Shaikh asked, "[d]oes that mean me, too?" (*Id.*) Gorman responded, "That we will see." (*Id.*) Gorman and Ekpenyong sent e-mails to Shaikh on such topics as cleaning the chemistry labs and putting away students' equipment and supplies. (*Id.* ¶ 76.) Shaikh contends these e-mails, all dated August 13, 2007 or before, were discriminatory,

oppressive, and retaliatory. (*Id.*)

Finally, Shaikh maintains that in April 2007, he received a memorandum from his department directing him to submit a list of all keys in his possession. (*Id.* ¶ 78.) He prepared the list and submitted it. (*Id.*) He was later asked by Epkenyong to submit the list again, and he did so. (*Id.*) Shaikh did not know the reason for the request. (*Id.*)

## II. Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, we "do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter." *Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008). Normally, all evidence and reasonable inferences are construed in favor of the non-moving party to determine if there is a genuine issue of material fact. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005).

Since Shaikh failed to respond to defendant's summary judgment motion, however, CCC's statement of material facts will be deemed admitted. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party").

## III. Analysis

As noted above, Shaikh alleges age discrimination under the ADEA and religion, race, and national origin discrimination under Title VII.

A. Hostile Work Environment

42 U.S.C. § 2000e 5(e)(1) requires Shaikh to file a discrimination claim with the EEOC within 300 days of the alleged unlawful employment practice. *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). An aggrieved party who does not file a claim within 300 days of a discrete act of discrimination cannot recover. *Id.* (stating that discrete acts are incidents of discrimination that are independently actionable unlawful employment actions).

When a plaintiff asserts a hostile work environment claim, on the other hand, the court may consider acts that occurred outside the 300 day time period "so long as an act contributing to that hostile environment takes place within the statutory time period." *Id*. at 105. It is not clear whether Shaikh intends to allege a hostile work environment claim, but to the extent that he is, it is time-barred. All of the purportedly discriminatory actions or comments based on Shaikh's religion, race, national origin, or age occurred in or before August 2007, more than 300 days before he filed his EEOC charge on December 14, 2009. None of the acts that could have contributed to a purported hostile environment took place within the statutory time period. Accordingly, any hostile work environment claim is time-barred.

B.      Discrimination Claim

Shaikh contends that he was terminated on June 30, 2009, for discriminatory reasons based on his race, religion, national origin, and age. To prove discrimination in violation of the ADEA, Shaikh must establish that the defendant subjected him to an adverse employment action because of his age. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Shaikh may attempt to prove his ADEA and Title VII claims under the direct or indirect methods. *Id*. at

297 (age)[2]; *Atanus*, 520 F.3d at 671 (religion, race, and national origin).

Under the direct method, a plaintiff must produce either direct or circumstantial evidence of discrimination. *Mach v. Will Cnty. Sheriff,* 580 F.3d 495, 499 (7th Cir. 2009). Direct evidence usually "requires an admission of discriminatory animus," while circumstantial evidence "establishes an employer's discriminatory motive through a longer chain of inferences." *Id.* According to the Seventh Circuit,

> [c]ircumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Atanus*, 520 F.3d at 672 (quoting *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007)).

Because Shaikh did not respond to the summary judgment motion, he points to no evidence of discrimination based on race, national origin, or religion. Even taking into account the various comments about his Friday prayers, traveling to Pakistan and Pakistan as a

---

[2] Another court in this district has noted that it "share[s] in the Seventh Circuit's skepticism as to whether the burden-shifting approach retains vitality after *Gross* [*v. FBL Fin. Serv., Inc.,* –– U.S. ––, 129 S.Ct. 2343, 2351 (2009)] because the evidence needed to make out a *prima facie* case of but-for causation [for age discrimination] under the direct method will be the same evidence a plaintiff would use to show that a defendant's stated reasons were merely a pretext for the adverse action taken against the plaintiff under the indirect, burden-shifting method." *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 915 n.11 (N.D. Ill. 2010). The Court, however, will assume both the direct and indirect methods can still be used absent definitive caselaw to the contrary.

"playground for Jihadists," Shaikh cannot support a claim of discrimination under the direct method. An "isolated comment or 'stray remark' is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *Mach,* 580 F.3d at 499; *see also Olson v. N. FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) ("A statement can be direct evidence of discriminatory intent where the statement is made around the time of and in reference to the adverse employment action."). Not only did the purported comments not take place around the time of his termination, there is no evidence that they were made by the decision-maker in reference to the termination. Moreover, Shaikh points to no evidence supporting a conclusion that his office relocation, the request for a list of keys he possessed, and the e-mails from Gorman and Ekpenyong regarding the tasks he was to perform were based in discrimination versus normal workplace administration and procedure.

The same holds true with respect to his age discrimination claim. While Shaikh could point to Associate Dean Gorman's statement that Shaikh might be included in an elimination of "everything old," the statement was not made around the time of the termination. Gorman's statement was purportedly made in 2006 but Shaikh was terminated in 2009. Since Gorman's solitary stray remark was made over two years before Shaikh's position was terminated and not in reference to Shaikh's termination, it is insufficient to establish discrimination under the direct method. Therefore, Shaikh's claim of discrimination fails under the direct method.

To survive summary judgment under the indirect method, Shaikh must establish a *prima facie* case by showing that he was (1) a member of a protected group; (2) meeting CCC's legitimate job expectations; (3) subjected to an adverse employment action; (4) treated less

favorably than similarly situated employees outside of the protected group. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir. 1995). If he establishes these four elements, the burden of production shifts to CCC to show it had a legitimate, non-discriminatory reason for terminating Shaikh. *Lucas v. Chi. Transit Auth.,* 367 F.3d 714, 728 (7th Cir. 2004). If CCC presents such a reason, the burden of production shifts back to Shaikh to show that CCC's offered reason was pretextual. *Id*.

There is no dispute that Shaikh is a member of a protected group under Title VII based on his religion (Muslim), his race or national origin (Pakistani), and under the ADEA based on his age (over 40). It is also uncontested that Shaikh suffered an adverse employment action when he was terminated on June 30, 2009.

Assuming that Shaikh was meeting CCC's legitimate employment expectations, Shaikh still cannot create a *prima facie* case because he has not pointed to a similarly situated employee who is outside the protected class that was treated more favorably. Since Shaikh cannot establish this element, any claim of discrimination under the indirect method cannot succeed.

Even assuming that Shaikh carried his initial burden and established the four elements of a *prima facie* case, he has not shown that CCC's reason for his termination was pretexual. *Paluck*, 221 F.3d at 1013 (noting that pretext occurs when an employer does not honestly believe the reason given terminating an employee). CCC has set forth evidence supporting its position that Shaikh's termination was necessitated by a lack of grant funding. (Def.'s Rule 56.1(a) Stmt., Dkt. # 92, ¶ 49.) This is a legitimate, non-discriminatory, reason to terminate Shaikh. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572 (7th Cir. 1998) (noting that an employer who followed a budget reduction mandate had a legitimate, non-discriminatory reason for

eliminating an employee). Shaikh has not pointed to any evidence demonstrating that CCC's reason was pretextual; accordingly, Shaikh's claims of discrimination also fails under the indirect method of discrimination.

### III.    Conclusion

For the foregoing reasons, CCC's motion for summary judgment [90-1] is granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the Court's docket.

**Date:** July 31, 2012

_____
**Ronald A. Guzman
United States District Judge**